STEVEN G. KALAR
Federal Public Defender
Northern District of California
CANDIS MITCHELL
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:          Candis_Mitchell@fd.org

Counsel for Defendant Arteaga-Estrada

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **United States of America**, | **Case No.:** CR 19–578 WHO |
| Plaintiff, | **Sentencing Memorandum** |
| v. | **Court:** Courtroom 2, 17th Floor |
| **Joel Arteaga-Estrada,** | **Hearing Date:** February 27, 2020 |
| Defendant. | **Hearing Time:** 1:30 p.m. |

**INTRODUCTION**

Defendant Joel Arteaga-Estrada, through undersigned counsel, respectfully offers the following memorandum in support of his request for a time served sentence of imprisonment.

The time serviced sentence is appropriate for the following reasons: (1) the § 3553(a) factors militate in favor of a substantially reduced sentence, and (2) Mr. Arteaga-Estrada will have additional custodial time following his criminal case as he awaits deportation to Honduras.

//

//

# SECTION 3553(A) ANALYSIS

**1. The Nature and Circumstances of the Offense**

On October 15, 2019, Mr. Arteaga was approached by an undercover police officer looking to buy drugs. The officer asked for $40 worth of heroin. Mr. Arteaga had the heroin in his mouth and gave the officer five bindles of heroin in exchange for the money. He was arrested without incident shortly afterwards.

**2. The History and Characteristics of the Defendant**

It is little wonder that in 2006, Mr. Arteaga found himself atop a train slowly travelling from Honduras through Central America to Mexico and then eventually on foot to cross the border into the United States.



Image 1. Migrants arrive at a rest stop in Ixtepec, Mexico, after a 15-hour ride atop a freight train headed north toward the U.S. border on Aug. 4. Thousands of migrants ride atop the trains, known as *La Bestia,* or The Beast, during their long and perilous journey through Mexico to the U.S.[1]

---

[1] *John Moore/Getty Images.* Taken from Sayre, Wilson, "Riding 'The Beast' Across Mexico To The U.S. Border" Parallels (June 4, 2014). Accessed at: https://www.npr.org/sections/parallels/2014/06/05/318905712/riding-the-beast-across-mexico-to-the-us-border.

SENTENCING MEMORANDUM
*ARTEAGA-ESTRADA*, CR 19–578 WHO

Whether caused by gangs, an ineffective government, drug trafficking, or poverty, Honduras currently claims the title of "murder capital of the world."[2] The government suffers from corruption and has lost international funding after allegations of human rights abuse.[3] There are also allegations of gang infiltration of their police force.[4] "According to the State Department, 42 percent of all cocaine headed to the U.S. and 90 percent of all cocaine flights now travel through Honduras."[5] In short, the country is hard on its citizens and harder still on people like Mr. Arteaga who lacked the education or money to change his place in the world.

Growing up, Mr. Arteaga would work with his father—who worked as a mason. He left school in the sixth grade to work in agricultural fields near their home to provide food for the family. As his father aged, he would get less and less work, and Mr. Arteaga was concerned because with his father's increasing age his family would be hard pressed to get the resources needed to take care of himself and his siblings. As a minor, he made the decision to become an economic migrant and come to the United States with the hope of sending money to his family back home to supplement his father's decreasing earing potential.

He took the chance and travelled, eventually ending up Northern California. After he arrived, he initially worked doing construction by digging trenches and helping to lay the foundation for new homes. After the construction work dried up, he began working as a dishwasher in a restaurant. He had been living with a cousin of his when he arrived in the Bay Area, but he became homeless after his cousin began demanding that Mr. Arteaga pay rent. He did not have the ability to pay rent, cover expenses for himself, and additionally send money to his family.

While here by himself and no longer living with his cousin, Mr. Arteaga missed having a family around him and he became depressed and started using heroin and crack while he was living on the

---

[2] United States Department of State Bureau of Diplomatic Security. Honduras 2018 Crimes and Safety Report, (April 3, 2018). Accessed at: https://www.osac.gov/Pages/ContentReportDetails.aspx?cid=23798
[3] Khan, Carrie, "Honduras Claims Unwanted Title of World's Murder Capital" Parallels (June 12, 2013). Accessed at: https://www.npr.org/sections/parallels/2013/06/13/190683502/honduras-claimsunwanted-title-of-worlds-murder-capital.
[4] Id.
[5] Id.

SENTENCING MEMORANDUM
*ARTEAGA-ESTRADA*, CR 19–578 WHO

streets. Mr. Arteaga began selling drugs to cover the expenses of his own habit and to find extra money to send to his family.

3. **The Need for the Sentence Imposed To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; To Afford Adequate Deterrence**

The requested sentence is appropriate in light of the totality of the circumstances and, thus, reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, and serves as an adequate deterrence to criminal conduct.

4. **The Need for the Sentence Imposed To Protect the Public from Further Crimes of the Defendant; and**

Mr. Arteaga will be deported following the conclusion of his sentence and it is unlikely that the he will repeat his actions in the future. He has no significant criminal history and the public faces little risk of harm from further crimes.

5. **The Need for the Sentence Imposed To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

Mr. Arteaga has a sixth grade education and speaks primarily Spanish—it is unlikely that any sentence that was not a lengthy one would legitimately provide him sufficient time in custody for him to acquire language skills that would permit him to attain a high school education or complete vocational training while in custody. He has no medical issues requiring treatment. His educational, medical, and mental conditions do not require special consideration for placement while in custody.

6. **The Kind of Sentences Available**

Here, the Court may impose any sentence up to 20 years' imprisonment, life-time supervised release, a $1,000,000 fine, and a $100 special assessment. A minimum term of three-years' supervised release is required.

//
//
//
//
//

7. **The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant as Set Forth in the Guidelines**

    A.    **Mr. Arteaga's Proposed Guideline Calculations**

```
Base Offense Level, USSG § 2D1.1(c)(14) ............................................. 12
Acceptance of Responsibility, USSG § 3E1.1(a) & (b) ....................... −2

Total Offense Level ............................................................................... 10
Criminal History Category ...................................................................... I
Sentencing Guideline Range ........................................................... 6-12
Mr. Arteaga's Recommendation ....................... time served (3 months)
```

    B.    **The Court Should Adjust Downward Two Levels for Acceptance of Responsibility**

Pursuant to U.S.S.G. § 3E1.1, the Court should depart two-levels because Mr. Arteaga accepted responsibility for his involvement in the present offense as demonstrated by his guilty plea and his truthful admission of the conduct comprising the offense.

8. **Any Pertinent Policy Statement**

While Mr. Arteaga would generally encourage the Court to not impose supervised release for individuals like Mr. Arteaga who will deported after the conclusion of their sentence, he recognizes that supervision is required to be imposed as a consequence of his conviction.

9. **Unwarranted Sentencing Disparity**

While the requested sentence is a departure from the guideline range, the departure is *di minimis* when considering the conduct and the additional time Mr. Arteaga will spend in immigration custody prior to his deportation.

10. **Restitution**

There is no need for an order of restitution in this case.

//

//

//

//

//

//

//

/

# CONCLUSION

The facts before the Court establish compelling reasons to impose a sentence slightly below the guideline range—Mr. Arteaga asks the Court to sentence him to a term of imprisonment of time served (approximately 3 months).

Dated:   February 15, 2020            Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

              /S
CANDIS MITCHELL
Assistant Federal Public Defender